IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80648-3-I |
| | ) | |
| Appellant/Cross-Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| J.J.W.D., | ) | |
| | ) | |
| Respondent/Cross-Appellant. | ) | FILED: March 2, 2020 |
| | ) | |

SMITH, J. — J.J.W.D. was 17 years old when the State charged him with three counts of rape of a child in the second degree. The parties stipulated that the facts were sufficient to support the juvenile court's retention of jurisdiction, and the juvenile court waived a decline hearing. The trial proceeded in the juvenile court despite the fact that J.J.W.D. turned 18 prior to trial and the defense counsel failed to request an order extending the court's statutory authority under the Juvenile Justice Act of 1977, chapter 13.40 RCW (JJA). The court found J.J.W.D. guilty as charged. However, at the disposition hearing, the State argued that the case needed to be dismissed and refiled in superior court. The court disagreed and, "[e]xercising its Superior Court authority over th[e] matter," extended its authority under the JJA nunc pro tunc. The court then sentenced J.J.W.D. pursuant to the JJA.

The State appeals. It concedes that J.J.W.D.'s counsel was ineffective for failing to move to extend the juvenile court's jurisdiction before J.J.W.D. turned

18. But it contends that the trial court could not thereafter extend its jurisdiction on a nunc pro tunc basis, and therefore, we must remand for dismissal. In his cross appeal, J.J.W.D. argues that the trial court erred by (1) admitting out-of-court statements from various witnesses and (2) denying his motion to suppress his statement that he did not know A.G. or her friend J.B.

We agree that some of the out-of-court statements were inadmissible hearsay but conclude that J.J.W.D. failed to rebut the presumption that the judge did not consider inadmissible evidence in reaching the verdict. We also conclude that although the trial court erred in admitting J.J.W.D.'s statement, the error was harmless. Finally, with regard to the trial court's jurisdiction, we agree that J.J.W.D.'s counsel was ineffective and accept the State's concession. Because we are required to remedy the violation of J.J.W.D.'s right to effective assistance of counsel by putting him in the same position he would have been in had his counsel been effective, we conclude that the trial court did not err by upholding the trial and sentencing J.J.W.D. pursuant to the JJA. Therefore, we affirm.

## FACTS

On August 7, 2017, the State charged J.J.W.D. with three counts of rape of a child in the second degree. The information alleged that sometime between September 1, 2016, and May 16, 2017, when J.J.W.D. was 16 and 17 years old, he engaged in sexual intercourse with A.G., who was 12 years old. On September 25, 2017, while J.J.W.D. was still 17 years old, the parties stipulated that there were sufficient facts for the court to retain juvenile jurisdiction. The court agreed, adopted the parties' stipulated facts, waived the mandatory decline

2

hearing, and concluded that J.J.W.D. "should remain under the jurisdiction of the Pierce County Juvenile Court."

On January 5, 2018, J.J.W.D. turned 18. The parties failed to note J.J.W.D.'s birthday and proceeded under the JJA without formally moving for a written order extending its application. Trial before the juvenile court began on February 27, 2018.

According to the testimony at trial, J.J.W.D. met A.G. after her friend J.B. established a relationship with J.J.W.D. via an online social media platform, Snapchat. One evening in late March or early April 2016, J.J.W.D. picked up J.B. and A.G. with his car to go to the Des Moines waterfront together. A.G. testified that she and J.B. told J.J.W.D. that they were 15 years old.

The day after their initial meeting, A.G. reached out to J.J.W.D. on Snapchat and they began communicating. A.G. testified that about a week later, J.J.W.D. picked her up from her home in the early evening. She testified that J.J.W.D. drove to a park, and she testified in detail that they "ended up having sex in the back of his car." Conversely, J.J.W.D. testified that he picked up A.G. after school, and they drove around, parked at a park, and talked. He answered no when asked whether he "kiss[ed] or ma[d]e out [with A.G.] or touch[ed] any parts of her body for gratification."

A.G. testified at trial that she "eventually told [J.J.W.D. her] real age" when they "were dating," but she did not remember exactly when she told him. She further testified that in response, J.J.W.D. "wasn't happy . . . but he said as long as [they] didn't tell people about the relationship, he would be fine with it." On the

3

other hand, J.J.W.D. testified that about a week after their first meeting, his friend Z.D.W. told him that A.G. was only 12 years old. J.J.W.D. testified that he then picked up A.G. after school "to confirm it [him]self." According to J.J.W.D., they stopped at a park and listened to music. He asked her how old she was, and "[A.G.] adamantly continued to deny that she was 12 years old." But she eventually told him her true age. J.J.W.D. testified that he told her they could have no contact "in any way, shape or form." J.J.W.D. testified that in response "[A.G] seemed like she understood but wasn't very happy." When asked whether A.G. "might have gotten a little bit upset after [he] told her that [he] didn't want to see her anymore," J.J.W.D. testified that it was "very possible." At this second encounter, J.J.W.D. again denied having sexual intercourse with A.G. A.G., on the other hand, testified that J.J.W.D. picked her up late at night and again the two of them had sexual intercourse in his car and "[t]he same thing as last time [happened]."

A.G.'s friend J.B. testified that about two weeks after this second meeting, she found A.G.'s journal and confronted her. J.B. testified that A.G. then told her that J.J.W.D. "tried to like do stuff with her and did stuff with her." D.S., A.G.'s friend, testified that around the same time, in May 2017, A.G. told her that she and "an older guy . . . had sex in the car." M.S., A.G.'s friend, and A.G. also testified that A.G. told her that "[s]he was raped." The trial court, over J.J.W.D.'s objection, held that if the prior consistent statement exception to hearsay applied, it would admit the testimony from A.G., J.B., D.S., and M.S. regarding what A.G. said.

4

D.S. and M.S. further testified that they then told Sumner Middle School counselor Donna Knutsen "that [A.G.] had told them that she had been raped." Knutsen testified that she brought A.G. to her office and asked her about what M.S. and D.S. had said. She testified that A.G. originally denied that she was sexually violated. Knutsen testified that she then said to A.G.: "Your friends are concerned because of what you've shared with them. And if it's true, we need to report it. And if it's not, we need to let them know because they are very upset." Knutsen testified that at that point, A.G. expressed anger toward her friends but told Knutsen, "[Y]es, Ms. Knutsen, it did happen," and answered yes when asked whether she had been sexually violated. Knutsen reported the incident to Assistant Principal Harris, where it was eventually relayed to the Sumner Police Department. Sergeant Jason Temple, a detective at the time, was assigned to the case.

Keri Arnold, a forensic child interviewer who interviewed A.G., testified at trial. The prosecutor asked Arnold a series of questions, such as whether A.G. disclosed any form of sexual abuse, whether A.G. was certain of what happened, and whether she was able to tell Arnold when it happened. Arnold answered yes to these questions. J.J.W.D. objected, and the State argued it was "going through an interview process" and wanted to know "whether or not there were disclosures made for purposes of her investigation." The court admitted the testimony. The court also permitted Sergeant Temple to testify that at the forensic interview, he was told that the nature of the contact he was investigating "was sexual intercourse."

5

Shortly thereafter, Sergeant Temple—dressed in plain clothes—went to Puyallup High School to talk with J.J.W.D. Present with Sergeant Temple was Student Resource Officer (SRO) Matthew Eller and Assistant Principal Harris. Sergeant Temple testified that he told J.J.W.D. that he was investigating a case but that J.J.W.D. did not have to talk with him. He informed J.J.W.D. that he was a detective with the Sumner Police Department. He did not give J.J.W.D. a Miranda[1] warning. But he asked J.J.W.D. whether he knew A.G. or J.B. J.J.W.D. responded that he did not know either of them. J.J.W.D. testified that Sergeant Temple initially misstated J.B.'s name, so he did not know to whom he was referring. After J.J.W.D.'s initial denial, Sergeant Temple then told J.J.W.D. that A.G. alleged that they had sex. Following a CrR 3.5 hearing on the admissibility of J.J.W.D.'s statement to Sergeant Temple, the court admitted Sergeant Temple's testimony that J.J.W.D. said he did not know A.G. or J.B.

The court also admitted testimony from Pediatric Nurse Practitioner Shawna Hood, who had examined A.G. Hood testified that A.G. told her "she had told a couple of friends at school that she had been raped a few months ago." Hood further testified that A.G. told her that "she had had some vaginal discharge, some vaginal discomfort, dysuria, which is kind of burning when she peed, but that they . . . weren't present" at the time of the examination. She testified that A.G.'s exam was "normal"[2] but that it did not surprise her because it

_____

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] "The examination revealed no signs of acute injury or healed trauma."

was common for any post intercourse symptoms to "heal[ ] without any visible sign that there was ever any injury."

The court found J.J.W.D. guilty of three counts of rape of a child in the second degree. Before disposition, the State pointed out that J.J.W.D. was 18 years old during trial and that juvenile jurisdiction had not been extended. The State argued that the court did not have jurisdiction over the matter or J.J.W.D., and the State moved to dismiss the disposition without prejudice such that the case could be refiled in superior court. J.J.W.D. objected on the ground that dismissal would result in a constitutional error. The court recessed and later held a subsequent hearing. The State conceded that "both parties clearly intended that this matter stay within the juvenile justice realm" and that had the State, the probation department, or the court noticed that J.J.W.D. had turned 18 before trial, "[the] order extending jurisdiction would have been granted." The court concluded it could "remedy any ineffective assistance of counsel in failing to extend jurisdiction by allowing [J.J.W.D] to both be prosecuted and adjudicated under the [JJA]." The court observed that extreme prejudice to J.J.W.D. would occur if he were subjected to a second trial. The court "[e]xercis[ed] its Superior Court authority" and retroactively extended its authority to adjudicate the matter under the JJA by entering a nunc pro tunc order. It accepted the verdict and sentenced J.J.W.D. under the JJA. The State appeals, and J.J.W.D. cross appeals.

## ANALYSIS
### Admissibility of Testimony

J.J.W.D. asserts that the testimony of seven witnesses was hearsay not within any exception and that the trial court erred in admitting such testimony.[3] We disagree that the court erred in admitting the testimony of Knutsen, Sergeant Temple, and Arnold. However, we agree that the testimony of A.G., M.S., D.S., and J.B. was improper hearsay testimony.

As an initial matter, the State claims that J.J.W.D. did not raise the necessary objections during trial to preserve certain challenges for appeal. "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Under ER 103(a)(1), when an error is raised based on admitting evidence, the adverse party must make "a timely objection or motion to strike . . . [and] stat[e] the specific ground of objection, if the specific ground was not apparent from the context." ER 103.

J.J.W.D. did not object to Knutsen's testimony pertaining to what she told A.G. when she confronted her or A.G.'s response that she had been sexually violated. Additionally, the court sustained J.J.W.D.'s objections or the State moved on without an answer with regard to the State's questions to Arnold: "From your interview, approximately how many incidents occurred?" and "When did she say the incidents had occurred?" Finally, J.J.W.D. objected with "lack of foundation" or "[c]ontinuing objection" to the State's questions to Arnold as to (1) whether A.G. "seem[ed] at any point unsure of what happened to her,"

---

[3] J.J.W.D. originally claimed nine witnesses gave improper testimony, but in his reply brief, J.J.W.D. conceded that his arguments with regard to Michael Payne, A.G.'s father, and Hood were not preserved for appeal.

8

(2) whether A.G. "seem[ed] in any way confused about who had done these things," and (3) whether A.G. "was . . . able to tell [Arnold] about when these things occurred." "[L]ack of foundation" is insufficient to preserve error for review on appeal. See City of Seattle v. Carnell, 79 Wn. App. 400, 402, 902 P.2d 186 (1995) (holding that the statement "lack of a 'sufficient foundation'" without "indicat[ion of] what specific foundational requirement was lacking" does not preserve error for appeal). Therefore, we do not address the merits of these challenges. However, J.J.W.D. sufficiently objected to the hearsay statements that we discuss below.[4]

*Testimony of Sergeant Temple and Knutsen*

J.J.W.D. argues the testimony of Sergeant Temple and Knutsen was inadmissible because any relevance was outweighed by the testimony's unfair prejudicial impact. We disagree.

Hearsay is inadmissible absent an exception. ER 802. However, "'[w]hen a statement is not offered for the truth of the matter asserted but is offered to show why an officer conducted an investigation, it is not hearsay and is admissible.'" State v. Chenoweth, 188 Wn. App. 521, 533, 354 P.3d 13 (2015) (quoting State v. Iverson, 126 Wn. App. 329, 337, 108 P.3d 799 (2005)). "Of course, as with any other evidence, the offered testimony must be relevant to an issue in controversy" to be admissible. State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). And even when evidence is relevant, "evidence may

---

[4] We disagree with the State's contention that J.J.W.D.'s brief fails to properly present error with regard to the hearsay testimonies.

9

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

In Chenoweth, Chenoweth was convicted of first degree incest committed against his 19-year-old son, C.C. 188 Wn. App. at 524-25. C.C.'s sister, the investigating officer, and a social worker testified at trial that they learned of the "allegations" against Chenoweth. Chenoweth, 188 Wn. App. at 532, 534 n.36. The trial court admitted the testimony "to show only how the allegations came to the attention of law enforcement." Chenoweth, 188 Wn. App. at 533. This court concluded that testimony of "'allegations' . . . without reference to any of the specifics . . . [were] not offered for the truth of the allegations, but to show what the witnesses did next and to provide a basis for their testimony." Chenoweth, 188 Wn. App. at 534. Thus, we concluded that the testimony was admissible.

Here, Knutsen testified that A.G.'s friends "came to [her] and said that [A.G.] had told them that she had been raped." The court ruled on J.J.W.D.'s objection that "[i]t is hearsay" but admitted it "for the purpose of what the counselor did" and "not . . . for the purpose of the truth of the matter asserted." Sergeant Temple testified that the nature of the conduct he was investigating was "sexual intercourse." The court originally sustained J.J.W.D.'s objection, but ended up allowing it to show Sergeant Temple's investigation and next steps, or his "state of mind[ and] what he did after he received the information."

Unlike Chenoweth, there *was* a truth to be asserted, namely that A.G. alleged sexual contact. However, the statements had relevance in that they explained why Knutsen contacted A.G. and why Sergeant Temple contacted and

interviewed J.J.W.D. at his school. Like in Chenoweth, the statements were only admitted to show how the allegations came to the attention of Knutsen and to explain why Sergeant Temple conducted the investigation. The testimony was not admitted for the truth of the matter asserted. Therefore, the testimony admitted was not improper.

J.J.W.D. relies on Edwards for the proposition that "Washington courts have repeatedly rejected . . . attempts to introduce highly prejudicial hearsay under the pretext that it is being offered for some other marginally relevant or irrelevant purpose." In Edwards, Olin Edwards was convicted of possession of a controlled substance with intent to deliver. 131 Wn. App. at 613. At trial, a police detective testified that a confidential informant told him that someone named Olin was dealing cocaine. Edwards, 131 Wn. App. at 613. Division Three concluded that the detective's testimony was irrelevant hearsay and should not have been admitted because it was "only [relevant] if it [wa]s admitted for its truth—that 'Olin' was involved in drug activity." Edwards, 131 Wn. App. at 614-15.

Here, as discussed, the testimony did have relevance other than for the truth of the matter asserted: to explain the process of the witnesses' investigations. And the testimony's probative value is not outweighed by the risk of unfair prejudice because the likelihood of prejudice is "greatly reduce[d]" in a proceeding without a jury. State v. E.J.Y., 113 Wn. App. 940, 952, 55 P.3d 673 (2002). Thus, Edwards is distinguishable and does not control.

11

*Testimony of Arnold*

J.J.W.D. contends that Arnold's yes-or-no responses to the State's questions were inadmissible hearsay. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." ER 801(a). Whether or not a statement is hearsay is a question of law that we review de novo. State v. Neal, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001).

The court allowed Arnold only to answer yes or no to the State's question as to whether A.G. disclosed any form of sexual abuse, whether A.G. was certain or unsure of what happened, and whether she was able to tell Arnold when it happened. The court allowed the testimony for the purpose of "whether or not there were disclosures made for purposes of her investigation." The State also asked whether A.G. was able to tell Arnold what had happened, when it had happened, and whom it happened with. The court ruled: "These are yes-or-no questions. I am going to allow. I haven't allowed her to tell what specifically she said because I believe that would be hearsay." Because Arnold did not testify regarding the content of any specific assertions made by A.G., but instead testified only as to whether or not A.G. made disclosures for purposes of the investigation, the statements were not hearsay. Like in Chenoweth, the testimony "was no[t] testimony about the content of disclosures." 188 Wn. App. at 534-35. Thus, the responses were admissible.

*Testimony of D.S., M.S., J.B., and A.G.*

J.J.W.D. contends that the trial court improperly admitted the testimony of D.S., M.S., J.B., and A.G. regarding A.G.'s out-of-court statements. The State offered the testimony as potential prior consistent statements. We conclude that the testimonies were inadmissible.

"A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." ER 801(d)(1)(ii). To qualify as a prior consistent statement, a statement must be "made at a time the declarant did not have a motive to fabricate." State v. Ellison, 36 Wn. App. 564, 568, 676 P.2d 531 (1984); Tome v. United States, 513 U.S. 150, 158, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). However, "prior consistent statements are not admissible to merely reinforce or bolster the testimony," State v. Purdom, 106 Wn.2d 745, 750, 725 P.2d 622 (1986), "for the simple reason that repetition is not generally a valid test for veracity." State v. Harper, 35 Wn. App. 855, 857, 670 P.2d 296 (1983). "A trial court's determination that a hearsay exception applies is judged on an abuse of discretion standard." State v. Magers, 164 Wn.2d 174, 187, 189 P.3d 126 (2008).

Here, in closing arguments, J.J.W.D. stated:

[W]e can't say that there couldn't be a possible motive because, again, [A.G.] . . . was rejected and perhaps felt humiliated when [J.J.W.D.] dropped her off and said, "I don't want to see you again. .

. . ." That's a very humiliating experience especially for a person that's very insecure.

J.J.W.D.'s counsel argued at trial that A.G. became upset when J.J.W.D. refused further contact with her and that this supplies a motive to make false allegation of rape. On the other hand, the State asserts that the motive put forth by J.J.W.D. during trial instead pertained to the inconsistencies between A.G.'s statements to Knutsen. The State argues that "one of the two statements had to be a recent fabrication." Because pointing to inconsistencies in statements does not create a charge of motive for recent fabrication, we disagree with the State and conclude that in order to have been prior consistent statements, the statements must have been made prior to the termination of the relationship between J.J.W.D. and A.G.

D.S., M.S., and J.B. testified respectively that A.G. said J.J.W.D. raped her, had sex with her, and "did stuff to her." A.G. also testified to what she told M.S. Over J.J.W.D.'s objections, the court allowed the testimony because "it may be that there is an exception [for prior consistent statements] that applies," and if it determined that the exception did not apply, it would disregard the testimony.

J.J.W.D. claims that the prior consistent statements testimony of D.S., M.S., J.B., and A.G. were made weeks following the last date of contact between A.G. and J.J.W.D. The last date of contact between J.J.W.D. and A.G. was around the end of April or the beginning of May. Each statement to a friend was made in the beginning or the middle of May, i.e., after the time A.G. and J.J.W.D. stopped seeing one another. Thus, the statements were made *after* the charge of motive for recent fabrication. And therefore, the testimonies were inadmissible

because they were not prior consistent statements. See Purdom, 106 Wn.2d at 750 ("'Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force.'" (quoting State v. Harper, 35 Wn. App. 885, 858, 670 P.2d 296 (1983))).

However, "in the absence of evidence to the contrary, we presume the judge in a bench trial does not consider inadmissible evidence in rendering a verdict." State v. Read, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). "The presumption is based on the notion that the trial judge knows and applies the law . . . ; it is 'a presumption on appeal that the trial judge, knowing the applicable rules of evidence, will not consider matters which are inadmissible when making [their] findings.'" State v. Gower, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014) (quoting State v. Miles, 77 Wn.2d 593, 601, 464 P.2d 723 (1970)). "A defendant can rebut the presumption by showing the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." Read, 147 Wn.2d at 245-46.

J.J.W.D. does not sufficiently rebut this presumption. The trial judge stated on multiple occasions that (1) she would not consider the prior consistent statement testimony for the truth of the matter asserted and (2) she would "disregard" the testimony entirely if it turned out that it was inadmissible. In closing arguments, when the State mentioned the consistency of A.G.'s testimony and J.J.W.D. objected, the court noted the objection "consistent with [its] prior rulings." The court's prior rulings merely stated that it would determine

15

admissibility and if it "ultimately determine[d] that that exception [wa]s not applicable," it would not consider it. The trial judge made no explicit findings regarding the admissibility of the testimony. However, it was clear from its rulings that it understood that the testimony would only be admissible if the prior consistent statement standard was satisfied. And even then, the court understood it would not be admitted for the truth of the matter asserted, but only to rebut the fabrication motive. At the disposition, the court noted: "[T]his is a bench trial, and the Court took its Findings very seriously and very carefully based [its verdict] on the Findings presented."

J.J.W.D. asserts that the case depends on credibility of either A.G. or J.J.W.D. and that therefore the admission of the testimony improperly bolstered A.G.'s testimony. The trial court did find "A.G.'s testimony credible." And "we defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence." State v. Ramirez-Estevez, 164 Wn. App. 284, 294, 263 P.3d 1257 (2011). But J.J.W.D. points to no evidence that the court determined A.G.'s credibility by considering the inadmissible testimony, and there is no evidence in the record that the court did so. To this end, we conclude that J.J.W.D. failed to show that the evidence was insufficient to support the conviction. In short, J.J.W.D. failed to overcome the Read presumption that the court did not consider the improper testimony. As such, we have no reason to decide whether or not any errors were harmless or whether we must reverse based on cumulative errors.[5]

---

[5] Furthermore, any reference to the State's use of the improper testimony during

16

CrR 3.5 Hearings

Finally with regard to J.J.W.D.'s cross appeal, he contends that the court violated Miranda when it admitted his statement to Sergeant Temple that he did not know A.G. or J.B. We agree but conclude the error was harmless.

Miranda warnings must be given "when the interview or examination is (1) custodial (2) interrogation (3) by a state agent." State v. Post, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992); see Miranda, 384 U.S. at 444. A defendant is in custody for purposes of Miranda if "the suspect reasonably supposed his freedom of action was curtailed," State v. Short, 113 Wn.2d 35, 41, 775 P.2d 458 (1989), "'to a degree associated with formal arrest.'" State v. Harris, 106 Wn.2d 784, 789-90, 725 P.2d 975 (1986) (internal quotation marks omitted) (quoting Berkemer v. McCarty, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). A defendant is subjected to interrogation when there is "a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 300, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

D.R. is instructive. 84 Wn. App. 832, 930 P.2d 350 (1997). In D.R., the State charged D.R., a 14-year-old, with having sexual intercourse with his 13-year-old sister. 84 Wn. App. at 834. D.R. "was summoned to the assistant principal's office," where Detective Matney, a social worker, and the assistant principal were present. D.R., 84 Wn. App. at 834. Detective Matney, dressed in plain clothes without his gun visible, showed D.R. "his badge and told him he was

---

closing arguments is futile because the presumption should apply, and we conclude that the trial judge did not consider the improper testimony or the State's arguments referencing it.

17

not required to answer questions." D.R., 84 Wn. App. at 834. Detective Matney did not provide D.R. his Miranda warnings. D.R., 84 Wn. App. at 834. D.R. testified that he did not believe he was free to leave and that Detective Matney never told him he was free to do so. D.R., 84 Wn. App. at 834. D.R. said Detective Matney "confronted him by saying, '[W]e know you've been havin' sexual intercourse with your sister,'" and Detective Matney admitted that "his questions were 'leading.'" D.R., 84 Wn. App. at 834 (alteration in original). At trial, Detective Matney was permitted to testify that D.R. stated that he had sexual intercourse with his sister. D.R., 84 Wn. App. at 835. D.R. testified that he did not make the statement and did not have intercourse with his sister. D.R., 84 Wn. App. at 835.

On appeal, D.R. claimed that the statement was admitted in violation of Miranda. D.R., 84 Wn. App. at 834. Division Three held that it was not relevant whether "D.R. subjectively believed he was free to leave or even understood the potential consequences of his conversation." D.R., 84 Wn. App. at 836. Instead, the court concluded that "the sole question is whether a 14-year-old in D.R.'s position would have 'reasonably supposed his freedom of action was curtailed.'" D.R., 84 Wn. App. at 836 (quoting Short, 113 Wn.2d at 41). The court held "that D.R. was in custody, in light of Detective Matney's failure to inform him he was free to leave, D.R.'s youth, the naturally coercive nature of the school and principal's office environment for children of his age, and the obviously accusatory nature of the interrogation." D.R., 84 Wn. App. at 838. The court concluded that the testimony's admission violated Miranda. D.R., 84 Wn. App. at

18

838. The court held that the error was not harmless because the only evidence introduced at trial was Detective Matney's testimony and a witness who testified that he "was not able to verify that he witnessed penetration." D.R., 84 Wn. App. at 838.

Here, the case is similar to D.R. The court determined that J.J.W.D. "was not under arrest . . . [and] was told he didn't need to answer any questions." But a 17-year-old in J.J.W.D.'s situation would reasonably suppose his freedom of action was curtailed. Like in D.R., Sergeant Temple, a state agent, did not tell J.J.W.D. he was free to leave and did not provide him Miranda warnings, but told him he did not have to answer any questions. The questioning here also took place in the assistant principal's office, a "naturally coercive" environment for a 17-year-old. See D.R., 84 Wn. App. at 838. And Sergeant Temple asked J.J.W.D. questions in the presence of J.J.W.D.'s assistant principal and SRO Eller, who was in full police uniform. Because J.J.W.D. was not told he could leave, was surrounded by two law enforcement officers and an authoritative adult, was brought to the assistant principal's office, and was a minor at the time, J.J.W.D. was in custody. Sergeant Temple asked J.J.W.D. whether or not he knew A.G. and J.B. and told him that A.G. alleged that they had sex. Because Sergeant Temple made it clear that the conversation revolved around an allegation of sexual contact with A.G., the interrogation involved a measure of compulsion for a 17-year-old beyond custody itself. Sergeant Temple should have known the likelihood of an incriminating response from J.J.W.D. And therefore, the statement was admitted in violation of Miranda.

Because the admission of the statement made to Sergeant Temple in the assistant principal's office violated J.J.W.D.'s constitutional rights, "we apply the constitutional harmless error standard." State v. Hudson, 150 Wn. App. 646, 656, 208 P.2d 1236 (2009). In a constitutional harmless error analysis, we presume prejudice. Hudson, 150 Wn. App. at 656. A "[c]onstitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." State v. Quaale, 182 Wn.2d 191, 202, 340 P.3d 213 (2014); Neder v. United States, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

The testimony at trial establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. First, J.J.W.D.'s and A.G.'s testimonies were in direct conflict many times, and the court had to make a determination as to the credibility of each. But unlike in D.R., the statement admitted was not an admission of guilt that contradicted J.J.W.D.'s testimony at trial, and the victim testified to the incident. Here, J.J.W.D. merely said he did not know A.G. or J.B. However, J.J.W.D. explained that Sergeant Temple misspoke originally, misstating J.B.'s name, and that when Sergeant Temple referenced A.G. in relation to sexual contact, he could not remember A.G. because he never had sexual contact with her. The issue of whether he lied about knowing A.G. or J.B. or simply misunderstood Sergeant Temple does not affect the verdict and was therefore harmless. Specifically, given the evidence presented at trial, including A.G.'s testimony, the testimony of forensic interviewer, Arnold, and the nurse practitioner, Hood, the trier of fact

20

"would have reached the same result absent the error." Quaale, 182 Wn.2d at 202. Therefore, we turn to whether the court had authority to convict and sentence J.J.W.D. under the JJA.

Authority under the JJA

The State contends that the juvenile court's jurisdiction lapsed when J.J.W.D. turned 18 and "that the dispositional order entered in this case is void." We disagree.

"[T]he juvenile courts in this state shall have exclusive original jurisdiction over all proceedings" involving most juvenile defendants. RCW 13.04.030(1)(e). "[I]n this context, the word 'jurisdiction' is more properly understood as authority[, because j]urisdictionally, juvenile courts and superior courts are not separate and distinct." State v. Maynard, 183 Wn.2d 253, 263, 351 P.3d 159 (2015). Rather, "juvenile courts exist as a division of the superior court." Maynard, 183 Wn.2d at 263.

When the State files charges prior to the defendant's 18th birthday, "[the] juvenile defendant has the statutory right to be prosecuted under the [protection] of the JJA" and "the juvenile division of the superior court [must] apply the JJA." Maynard, 183 Wn.2d at 262-63. These entitlements lapse "[w]hen a juvenile cause is pending and not heard on its merits prior to the time the juvenile reaches 18." State v. Kramer, 72 Wn.2d 904, 907, 435 P.2d 970 (1967); see RCW 13.40.300. But a trial court has the authority to extend the JJA "beyond a defendant's 18th birthday for a variety of explicit reasons." Maynard, 183 Wn.2d at 263. There is "no prohibition to extending the trial court's authority to apply

21

provisions of the JJA as a remedy for the violation of a juvenile's right to effective assistance of counsel." Maynard, 183 Wn.2d at 263.

Maynard is dispositive here. Maynard was charged in juvenile court 25 days before his 18th birthday. Maynard, 183 Wn.2d at 258. Seven days before his 18th birthday, the State sent Maynard's attorney a plea proposal, which Maynard intended to accept. Maynard, 183 Wn.2d at 258. After the State realized that Maynard would turn 18 before the plea expired, it sent an email informing Maynard's attorney. Maynard, 183 Wn.2d at 258. Maynard's attorney did not read the email prior to Maynard's 18th birthday and failed to move for the juvenile court to extend jurisdiction under the JJA. Maynard, 183 Wn.2d at 258. The juvenile court granted the State's request for dismissal, and the State then filed charges in the superior court. Maynard, 183 Wn.2d at 256. When the superior court dismissed the charges with prejudice, the State appealed. Maynard, 183 Wn.2d at 256.

Our Supreme Court held that "the juvenile court's statutory *authority* lapsed" when defense counsel failed to move for an extension of jurisdiction, which constituted ineffective assistance of counsel depriving Maynard of his Sixth Amendment right. Maynard, 183 Wn.2d at 261 (emphasis added). The court held that the only adequate remedy for the constitutional violation was for the case to be remanded "for further proceedings in accordance with the JJA" and for the State to reoffer the plea. Maynard, 183 Wn.2d at 264. The court also concluded that if Maynard were convicted, "the trial court may still impose a juvenile sentence." Maynard, 183 Wn.2d at 264. In fashioning a remedy, the

court observed that when remedying a deprivation of effective assistance of counsel "'remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" Maynard, 183 Wn.2d at 262 (quoting United States v. Morrison, 449 U.S. 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981)).

Here, as in Maynard, J.J.W.D.'s counsel failed to move for an extension of jurisdiction before J.J.W.D. turned 18. And we accept the State's concession that this failure constituted ineffective assistance of counsel. We therefore must determine the appropriate remedy, and the parties agree that jurisdiction would have been extended had J.J.W.D.'s counsel been effective. Pursuant to Maynard, we must fashion a remedy that will put J.J.W.D. "in the same position he was in before the violation of his right to effective representation" and thus before the "statutory time to extend juvenile court jurisdiction elapsed." 183 Wn.2d at 262, 264; see also, Morrison, 449 U.S. at 364 ("[R]emedies should be tailored to the injury suffered from the constitutional violation."); Lafler v. Cooper, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) ("[A] remedy must 'neutralize the taint' of a constitutional violation, . . . while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." (quoting Morrison, 449 U.S. at 365)). J.J.W.D. is in the same position he would have been in had his counsel properly moved for an extension of jurisdiction. Thus, we may affirm the judgment and sentence.

23

To this end, Posey is instructive. There, following a jury trial in adult court, Posey was acquitted of the charged offense of first degree assault, which triggered the automatic decline of juvenile court jurisdiction, but he was found guilty of offenses that did not trigger the automatic decline provision of the JJA. State v. Posey, 161 Wn.2d 638, 641, 167 P.3d 560 (2007) (Posey I). The trial court sentenced Posey under adult sentencing guidelines, failing to remand to the juvenile court for a decline hearing. Posey I, 161 Wn.2d at 647. Our Supreme Court remanded to the juvenile court for further proceedings. Posey I, 161 Wn.2d at 649. Upon remand to the juvenile court, Posey argued that no court had authority to sentence him because he was now 21 years old, and he moved to dismiss. State v. Posey, 174 Wn.2d 131, 133-34, 272 P.3d 840 (2012) (Posey II). The juvenile court agreed with Posey and "acted in her role as a superior court judge," sentencing Posey "as an adult but impos[ing] a sentence consistent with the standard juvenile range." Posey II, 174 Wn.2d at 133. Our Supreme Court upheld the judgment and sentence. Posey II, 174 Wn.2d at 142.

We may do the same. First, a court may act as a superior court to impose a juvenile sentence and conviction pursuant to the JJA. See Posey II, 174 Wn.2d 131; Maynard, 183 Wn.2d 253. Second, "[t]he only absolute prohibition we see to applying the [Juvenile Justice Act] is when the defendant allegedly committed the crime after the age of 18." Maynard, 183 Wn.2d at 263. Finally, as mentioned, pursuant to Maynard, to remedy the constitutional violation, the superior court had to act and proceed under the JJA, which it did throughout the

24

trial, even if it believed it was acting as a juvenile court. Thus, we affirm the judgment and sentence on this basis.

The State distinguishes Maynard primarily on the basis that the trial court in Maynard was the adult division of the superior court. In effect, the State argues that the adult division, not the juvenile division, may act under the authority of the JJA in order to remedy an ineffective assistance of counsel claim. Like in Posey II, the State's "argument wrongly assumes that the juvenile court and the superior court are different courts with different jurisdictional requirements." 174 Wn.2d at 141. But because they are not distinct, the State's argument fails.

The State next contends that "[t]his case falls squarely within State v. Nicholson," 84 Wn. App. 75, 925 P.2d 637 (1996). In Nicholson, Nicholson was charged in juvenile court with six counts of burglary and two counts of theft. 84 Wn. App. at 76. The State moved for the juvenile court to decline jurisdiction. Nicholson, 84 Wn. App. at 76. But before the decline hearing, Nicholson turned 18 and the State presented an ex parte order to dismiss the charges, which the court granted. Nicholson, 84 Wn. App. at 76-77. The court subsequently entered findings of fact and conclusions of law in support of a nunc pro tunc order, finding that the prosecutor had acted in bad faith and was thus "estopped from denying that jurisdiction was extended." Nicholson, 84 Wn. App. at 77. Division Two concluded that the State was not estopped and that because the juvenile court failed to "enter a written order extending jurisdiction before Nicholson turned 18," the court held "that juvenile court jurisdiction [had] lapsed.

25

Nicholson, 84 Wn. App. at 78. The court reversed and vacated the nunc pro tunc order. Nicholson, 84 Wn. App. at 79.

In doing so, the Nicholson court relied on State v. Rosenbaum for the proposition that "[o]nce juvenile court jurisdiction has lapsed, the court can not enter a written order extending jurisdiction, even with the consent of both parties." Nicholson, 84 Wn. App. at 78; Rosenbaum, 56 Wn. App. 407, 784 P.2d 166 (1989). In Rosenbaum, we concluded that a nunc pro tunc order "record[s] some prior act of the court which was *actually performed* but not entered into the record at that time." 56 Wn. App. at 410-11. We determined that because there was no evidence that "there was even any discussion regarding the extension of jurisdiction prior to Rosenbaum's 18th birthday," the nunc pro tunc order was improper. Rosenbaum, 56 Wn. App. at 411.

We agree with the State that the nunc pro tunc order retroactively extending the juvenile court's jurisdiction was improper. However, Nicholson and Rosenbaum are distinguishable because they did not involve ineffective assistance of counsel claims. Furthermore, both cases were decided prior to our Supreme Court's decision in Maynard. And as discussed, we affirm the court's ruling on grounds distinct from the issuance of the nunc pro tunc order. Thus, Nicholson and Rosenbaum do not require reversal.

As a final matter, the State contends we must reverse and remand for proceedings in the superior court because J.J.W.D. was not afforded his right to trial by jury. But J.J.W.D. does not bring this challenge on appeal and because that challenge is not before us, we decline to reverse on that basis.

26

In short, because the court could have exercised superior court authority to enter the judgment and sentence, because the parties acted below as though JJA authority was properly extended, and because <u>Maynard</u> requires the court to put J.J.W.D. in the position he would have been in had his counsel not been ineffective, the result of the trial and sentencing may stand despite the impropriety of the nunc pro tunc order.

We affirm.

_Smith, J._

WE CONCUR:

_____

_Mann, ACJ_