# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54594-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CRISTIAN MANUEL AMADOR, | |
| Appellant. | |

MAXA, J. – Cristian Amador appeals his conviction of second degree rape based on the victim being incapable of consenting to sexual intercourse because she was physically helpless or mentally incapacitated. The conviction arose out of an incident in which Amador had sexual intercourse with ED in her house while she was intoxicated and partly asleep. ED stated that she had no memory after taking tequila shots at a bar until she woke up in her bed to Amador having sex with her. Amador claimed that ED consented to sexual intercourse by her actions.

We hold that (1) the trial court's exclusion on relevance grounds of evidence that Amador and ED had sex three years earlier and that ED had bragged to a friend about that sexual encounter on the night of the incident was not an abuse of discretion and did not violate Amador's constitutional right to present a defense; (2) the trial court did not err in excusing a juror for bias who had attended high school with Amador and knew him; and (3) although we believe that the trial court's jury instruction that it was not necessary that the testimony of the victim be corroborated in order to convict may have constituted an unconstitutional comment on

the evidence, we are constrained by a 1949 Supreme Court case to hold that the trial court did not err in giving this instruction. Accordingly, we affirm Amador's conviction.

FACTS

*Background*

ED met Amador in high school. They had been messaging each other off and on since then. They reconnected in person about a week before the incident. On the morning of February 7, 2018, ED's 22nd birthday, Amador and ED worked out together at a gym. They made plans to go out to a bar after Amador got off work that evening. That night, ED picked up Amador at his house and drove to a bar. Later, ED's friend River Petramalo joined them.

ED drank beer and liquor at the first bar. The three then went to a different bar, with Petramalo driving because ED was intoxicated. ED drank two or three tequila shots at the second bar.

After the tequila shots, ED and Amador were flirting and touching each other in the bar. Petramalo let Amador and ED use her car to continue being physical. When Petramalo later went out to the car, she saw Amador and ED making out with ED's shirt pulled down to expose one of her breasts. Petramalo got into the car and drove away with ED and Amador in the back seat. ED then threw up. Petramalo drove to ED's house, where she helped ED up to her room, helped get ED's clothes off, and put her in bed. Petramalo thought that ED was pretty drunk. ED asked Amador to come inside with her, but he declined.

Petramalo then drove to her house with Amador. Amador told Petramalo that he was going back to ED's house to check on her. Petramalo paid for an Uber so that Amador could go to ED's house, and she told him which room was ED's. Amador arrived at approximately 3:30 AM, went into ED's room, and got into bed with her.

ED did not remember what happened after she drank the tequila shots or how she got home. The next thing she remembered was being in her bed with Amador on top of her. He was having sex with her and kissing her. ED was conscious for about a minute before she passed out. When ED woke up the next morning both she and Amador were naked and in the bed together. She woke Amador up and took him home.

ED reported the incident to law enforcement, and officers interviewed both ED and Amador about the incident. The State charged Amador with second degree rape, alleging that he engaged in sexual intercourse with ED when she was incapable of consent by reason of being physically helpless or mentally incapacitated.

*Motions Regarding Prior Sexual Encounter*

Before trial, the State moved in limine to exclude any reference of prior sexual encounters between ED and Amador. Amador filed a motion seeking to admit evidence of a prior sexual encounter under RCW 9A.44.020(2), the rape shield statute. Amador's motion was supported by an affidavit from his attorney, who stated that (1) both ED and Amador had indicated that they had slept together a few years earlier at ED's parents' house when Amador was a virgin, and (2) on the night of the alleged rape ED was bragging about taking Amador's virginity. Amador's attorney admitted that Amador did not hear ED's statement about talking his virginity. The prosecutor represented that the parties' statements showed that the sexual encounter occurred at least three years earlier.

The trial court ruled that evidence regarding the prior sexual encounter would not be allowed at trial. The court stated that the prior encounter was too remote, and that "[t]he fact that they had sex three years ago really doesn't have anything to do with this case, that night." 1 Report of Proceedings (RP) at 23. The court characterized Amador's position as "arguing that I

3

should tell every man in the world that because I had sex with that woman . . . three years ago, then she's fair game today." 1 RP at 27. The trial court also excluded ED's statement about taking Amador's virginity.

*Jury Selection*

During jury selection, juror 13 stated that he knew Amador. Juror 13 and Amador went to high school together and had some classes together, although Amador was a year or two older. They were in a business marketing club together, and they were together once or twice for four or five days at the state business marketing competition in Bellevue. Juror 13 stated that he thought Amador was in the military, Amador was not a bad person, and this could happen to anyone. He believed that Amador probably was not the kind of person who would rape someone, but that did not mean that he could not have committed the crime. Juror 13 said that he could not honestly say yes or no whether his relationship with Amador would affect his outlook on the case.

The State moved to excuse juror 13 for cause because he knew information that the trial court had specifically excluded, specifically Amador's military service. The State also was concerned that juror 13 already had a preconceived idea that Amador was a good person and that juror 13 liked him. And the State emphasized that juror 13 had never indicated that he could set those thoughts aside.

The trial court granted the for cause challenge based on juror 13's bias. The court stated:

> You know, and it's been a lot of years since I've been in high school, but we kind of held out those people that were a couple years older with some reverence, some importance that wouldn't attach to other people. And the reality is we carry that through the rest of our lives with us those people we knew in high school that were two years older than [us]. We always probably will think of them in a more favorable way. I think that in and of itself creates an unsurmountable bias for this particular juror.

1 RP at 157.

4

*Trial*

At trial, ED, Petramalo, and Amador testified to the events of the evening as stated above. A law enforcement officer testified about a recorded interview she had with Amador in which Amador said that he went back to ED's house with the intent of something sexual happening.

Amador testified that he went back to ED's house, entered the house through an unlocked door, and went to her room. ED had vomited and Amador tried to wipe some of it off her. There was some vomit in ED's hair. Amador got into bed with ED with his clothes on and fell asleep. He testified that he woke up to ED rubbing against him in a spooning manner. They started cuddling, and ED started rubbing her hips against his groin. They started kissing. Amador took off ED's underwear and ED assisted him in taking off his pants and underwear. They then had sex. Amador acknowledged that ED was drunk and half asleep when they had sex.

Amador stated that while this was happening ED did not say anything to him. But she did not push him away or indicate that she did not want to have sex. Amador admitted that during the entire evening ED never said that she wanted to have sex with him.

The trial court instructed the jury that the State had to prove beyond a reasonable doubt that "the sexual intercourse occurred when [ED] was incapable of consent by reason of being physically helpless or mentally incapacitated." Clerk's Papers (CP) at 49. The trial court also gave the following jury instruction: "In order to convict a person of the crime of Rape in the Second Degree . . . it is not necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility." CP at 50. Amador objected to giving this instruction. The court also instructed the jury on the affirmative defense that Amador

reasonably believed ED was not mentally incapacitated or physically helpless, which Amador had the burden of proving by a preponderance of the evidence.

The jury found Amador guilty of second degree rape. Amador appeals his conviction.

ANALYSIS

A.   EXCLUSION OF PRIOR SEXUAL ENCOUNTER

Amador argues that the trial court violated his constitutional right to present a defense by excluding evidence of his prior sexual encounter with ED and ED's statement on the night of the incident about taking Amador's virginity in that encounter. We disagree.

1.   Legal Principles

Both the United States Constitution and the Washington Constitution protect a criminal defendant's right to present a complete defense. *State v. Orn*, 197 Wn.2d 343, 347, 482 P.3d 913 (2021). However, a defendant's right to present a defense is not absolute. *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019). A defendant has no constitutional right to present evidence that is inadmissible under standard evidence rules. *State v. Wade*, 186 Wn. App. 749, 764, 346 P.3d 838 (2015). For example, "[d]efendants have a right to present only relevant evidence, with no constitutional right to present irrelevant evidence." *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Therefore, a defendant's evidence must at least have minimal relevance to implicate the right to present a defense. *Id.*

The Supreme Court has developed a two-step process when addressing evidentiary rulings and the right to present a defense. *Arndt*, 194 Wn.2d at 797-98. First, the challenged evidentiary rulings are reviewed under an abuse of discretion standard. *Id.* at 797. Second, the rulings are reviewed de novo to determine whether they violated a defendant's constitutional right to present a defense. *Id.* at 797-98. In evaluating whether the exclusion of evidence

violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Id.* at 812. In some cases involving evidence with high probative value, there may be no state interest compelling enough to exclude the evidence. *Id.*

2.    Relevancy Determination

The trial court excluded evidence of Amador's prior sexual encounter with ED and ED's statement on the night of the incident about taking Amador's virginity in that encounter. As noted above, we review a trial court's decision to admit or exclude evidence for abuse of discretion. *Arndt*, 194 Wn.2d 797. We conclude that these rulings did not constitute an abuse of discretion.

a.    Legal Background

Under ER 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Irrelevant evidence is not admissible. ER 402. The threshold for admitting relevant evidence is low; there must only be minimal relevance. *State v. Horn*, 3 Wn. App. 2d 302, 313, 415 P.3d 1225 (2018).

RCW 9A.44.020(2), the rape shield statute, addresses the admissibility of an alleged rape victim's prior sexual behavior with the defendant:

> Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, *but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.*

(Emphasis added). The term "material" means essentially the same thing as "relevant." *See State v. Weaville*, 162 Wn. App. 801, 820, 256 P.3d 426 (2011). The admissibility of past sexual behavior evidence is within the sound discretion of the trial court. *Id.* at 818.

"The inquiry into the relevance of past sexual activity requires an all-encompassing examination, both of the past sexual activity and of the circumstances comprising the defendant's defense, such as a claim of consent." *Id.* at 820. The relevance question regarding an alleged rape victim's prior sexual activity is whether " 'the woman's consent to sexual activity in the past, without more, makes it more probable or less probable that she consented to sexual activity on this occasion.' " *Id.* (quoting *State v. Hudlow*, 99 Wn.2d 1, 10, 659 P.2d 514 (1983)). A key factor in this determination is the factual similarities between the prior sexual encounter and the sexual encounter at issue in the rape trial. *Weaville*, 162 Wn. App. at 820.

A person is guilty of second degree rape if the person has sexual intercourse with a person who "is incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b).[1] There is a defense "which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless." RCW 9A.44.030(1).

  b. Analysis

Three factors show that evidence of Amador's prior sexual encounter with ED was irrelevant. First, as the trial court emphasized, the prior sexual encounter occurred three years earlier. The fact that the two had consensual sex that long ago has little bearing on whether ED would consent to sex three years later.

---

[1] RCW 9A.44.050 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

Second, the only similarity between the two sexual encounters is that they both happened at ED's house. Amador made no showing of any other similarity. There is no indication that three years earlier (1) Amador entered ED's house through an unlocked door in the middle of the night, (2) ED was drunk and had vomited on herself, (3) ED was asleep when Amador got into bed with her, (4) ED was drunk and half asleep when they were having sex, and (5) no words were exchanged before or during Amador having sex with ED.

Third, the fact that Amador was charged under RCW 9A.44.050(1)(b) is significant. The only question for the jury was whether "the sexual intercourse occurred when [ED] was incapable of consent by reason of being physically helpless or mentally incapacitated." CP at 49. The question for the jury was whether ED was physically helpless or mentally incapacitated when Amador had sexual intercourse with her. Whether ED consented to sex with Amador three years earlier has nothing to do with whether she was physically helpless or mentally incapacitated when Amador had sex with her this time.

Regarding the exclusion of ED's statement about taking Amador's virginity, that statement was irrelevant to whether Amador believed that ED would consent to sex because he did not hear the statement. And the statement could not affect Amador's belief that ED had the capacity to consent at the time he had sex with her. Amador argues that this evidence was relevant to ED's state of mind that evening, and suggested that she remembered her previous sexual encounter with Amador favorably and that she was open to having another sexual encounter with him. But the mere fact that she remembered their prior sexual encounter is not relevant to whether she would consent to another sexual encounter three years later.

The standard of review is abuse of discretion. *Arndt*, 194 Wn.2d 797; *Weaville*, 162 Wn. App. at 818. We hold that the trial court did not abuse its discretion in excluding evidence of

ED's and Amador's prior sexual encounter and ED's statement on the night of the incident about taking Amador's virginity in that encounter.

### 3. Right to Present a Defense

Although we conclude that the trial court did not abuse its discretion in excluding evidence of Amador's prior sexual encounter with ED and ED's statement about taking Amador's virginity, we must evaluate de novo whether these rulings violated Amador's constitutional right to present a defense. *Arndt*, 194 Wn.2d at 797-98, 812.

Whether the defendant "was able to present relevant evidence supporting her central defense theory" is a significant factor in this analysis. *Id.* at 814. Conversely, evidence that has an extremely high probative value or that represents the defendant's entire defense generally cannot be excluded without violating the constitutional right to present a defense. *Id.* at 813.

Here, Amador was allowed to present significant evidence to support his defense of consent. The evidence from an independent witness allowed Amador to argue that ED was interested in having sex with him – flirting and touching him in the bar, making out with him in the car with an exposed breast, and asking him to come inside when she arrived at her house. In addition, Amador testified to all the facts that supported his argument that ED consented to sex. This included his testimony that ED engaged in conduct – cuddling, rubbing her hips against his groin, kissing, assisting in taking off his clothes – that indicated consent to have sex.

In other words, Amador "was able to present relevant evidence supporting [his] central defense theory." *Id.* at 814. His entire defense was not barred by the exclusion of the evidence of his prior sexual encounter with ED or her statement about taking his virginity.

We hold that the trial court's exclusion of evidence of Amador's prior sexual encounter with ED and ED's statement on the night of the incident about taking his virginity in that encounter did not violate Amador's constitutional right to present a defense.

B.     DISMISSING A JUROR FOR CAUSE

Amador argues that the trial court erred in dismissing juror 13 for cause because there was no actual bias.  We disagree.

Either party may move to dismiss a prospective juror for cause where the juror shows actual bias.  RCW 4.44.130; RCW 4.44.190.  A juror possesses actual bias where he or she evidences a "state of mind . . . which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights" of the party challenging the potential juror.  RCW 4.44.170(2).  Under RCW 2.36.110, the trial court has a duty to excuse any juror who, in the opinion of the judge, is unfit to serve as a juror because of bias.

We review for an abuse of discretion a trial court's ruling on a party's for cause challenge of a juror.  *State v. Lawler*, 194 Wn. App. 275, 282, 374 P.3d 278 (2016).  We give great deference to the trial court because of its ability " 'to observe the juror's demeanor [during voir dire] and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial.' "  *Id.* (quoting *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012)).

Amador argues that the facts that juror 13 knew him and went to high school with him were innocuous and did not demonstrate bias.  However, Amador is not someone juror 13 just met in passing.  They had classes together and were in the same business marketing club.  Amador and juror 13 spent four or five days together at the state business marketing competition once or twice.  And juror 13 thought that Amador was good guy and probably was not the type

11

of person who would rape someone. Juror 13 also was aware of Amador's military service, which the trial court had excluded. Most significantly, when asked if his relationship with Amador would affect the case, juror 13 could not honestly answer yes or no.

Amador emphasizes that the trial court's basis for dismissing juror 13 was the court's own subjective belief that younger students hold some reverence for older students in high school. Amador argues that this is an irrational basis. However, the trial court was able to watch juror 13's demeanor and was in the best position to determine if juror 13 "looked up" to Amador to the extent that he was biased. And apart from the court's comments, juror 13's answers provided a valid basis for the court's finding of bias.

Given the great deference afforded to the trial court in making these decisions, we hold that the trial court did not abuse its discretion in dismissing juror 13 for cause.[2]

C.      NO CORROBORATION JURY INSTRUCTION

Amador argues that the trial court erred in instructing the jury that no corroboration of the ED's testimony was needed to convict him of second degree rape. He claims that giving this instruction without also instructing that no corroboration of his testimony that ED consented was required to acquit constituted a comment on the evidence and violated due process. We are sympathetic to Amador's argument, but we are constrained to conclude that this instruction was not a comment on the evidence.

Article IV, section 16 of the Washington Constitution states, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A trial court makes an improper comment on the evidence if it gives a jury instruction that conveys to

---

[2] Because of our holding, we do not address the State's argument that even an erroneous dismissal of a juror for cause is not grounds for reversal because a defendant could never show prejudice.

the jury his or her personal attitude on the merits of the case. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). But because it is the trial court's duty to declare the law, a jury instruction that does no more than accurately state the law pertaining to an issue is proper. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015). We review the instructions de novo to determine if the trial court has improperly commented on the evidence. *Levy*, 156 Wn.2d at 721.

The trial court's instruction was based on RCW 9A.44.020(1), which provides: "In order to convict a person of any crime defined in this chapter[,] it shall not be necessary that the testimony of the alleged victim be corroborated."

Significantly, the Washington Pattern Criminal Jury Instructions (WPIC) do not propose a no corroboration instruction. In addition, a WPIC comment recommends against giving such an instruction:

> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. Whether a jury can or should accept the uncorroborated testimony of the prosecuting witness or the uncorroborated testimony of the defendant is best left to argument of counsel.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 45.02 cmt. at 1004 (5th ed. 2021).

Nevertheless, courts have upheld sex offense victim no corroboration instructions as correct statements of the law under RCW 9A.44.020(1). *E.g.*, *State v. Chenoweth*, 188 Wn. App. 521, 537, 354 P.3d 13 (2015); *State v. Johnson*, 152 Wn. App. 924, 936-37, 219 P.3d 958 (2009); *State v. Zimmerman*, 130 Wn. App. 170, 182–83, 121 P.3d 1216 (2005).

However, the concurring opinion in *Chenoweth* stated, "If the use of the noncorroboration instruction were a matter of first impression, I would hold that it is a comment on the evidence and reverse the conviction." 188 Wn. App. at 538 (Becker, J., concurring). And

this court in *Zimmerman* expressed misgivings about the no corroboration instruction, but believed that it was bound by the Supreme Court's holding decades earlier in *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949) that the instruction was not an improper comment on the evidence. *Zimmerman*, 130 Wn. App. at 182-83.

In *Clayton*, the trial court gave the following instruction:

You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

32 Wn.2d at 572. The defendant argued that the instruction was a comment on the evidence because "the instruction singles out the prosecutrix from all the other witnesses and tells the jury that the weight of her testimony is such that a conviction can be based upon it alone." *Id.* at 573.

The court rejected this argument, holding that the trial court did not commit reversible error in giving the no corroboration instruction. *Id.* at 578. The court stated:

It is true that, in the instruction of which complaint is here made, the trial court in a sense singled out the testimony of the prosecutrix. However, what the court thereby told the jury was not that the uncorroborated testimony of the prosecutrix in the instant case was sufficient to convict the appellant of the crime with which he was charged, but, rather, that in cases of this particular character, a defendant may be convicted upon such testimony alone, provided the jury should believe from the evidence, and should be satisfied beyond a reasonable doubt, that the defendant was guilty of the crime charged. That was a correct statement of law.

*Id.* at 574.

Amador acknowledges that the challenged instruction is a correct statement of the law and that Washington courts have upheld the use of the instruction. However, he emphasizes that none of these cases involved a situation where the defendant testifies that the alleged victim consented to sexual intercourse. He argues that the no corroboration instruction is an improper

comment on the evidence in this context because there is no corresponding instruction telling the jury that it also may believe the defendant's testimony without corroboration.

Regarding due process, Amador argues that giving the no corroboration instruction violates his due process right to a fair trial. He claims that it is fundamentally unfair to instruct the jury that no corroboration of the alleged victim's testimony is required to convict without also instructing that no corroboration of the defendant's testimony is required to acquit based on an affirmative defense.

Amador's arguments appear to have merit. The no corroboration instruction seems to favor the alleged victim's testimony over the defendant's testimony. And a number of cases in other jurisdictions have disapproved of giving no corroboration instructions. *E.g.*, *State v. Stukes*, 416 S.C. 493, 499-500, 787 S.E.2d 480 (2016); *Gutierrez v. State*, 177 So. 3d 226, 230-34 (Fla. 2015); *Ludy v. State*, 784 N.E.2d 459, 461-63 (Ind. 2003).

In *Gutierrez*, the Florida Supreme Court reversed a sexual battery conviction because the trial court gave a no corroboration instruction based on a statute similar to RCW 9A.44.020(1). *Gutierrez*, 177 So. 3d at 230-34. The court stated:

> [A]ny statement by the judge that suggests one witness's testimony need not be subjected to the same tests for weight or credibility as the testimony of others has the unfortunate effect of bolstering that witness's testimony by according it special status. The instruction in this case did just that, and in the process effectively *placed the judge's thumb on the scale* to lend an extra element of weight to the victim's testimony.

*Id.* at 231-32 (emphasis added). The court concluded that the instruction "allowed the jury to weigh [the alleged victim's] testimony more heavily than other evidence that was not inconsistent with consensual sex." *Id.* at 234.

There is no need for a no corroboration instruction, and the better course is for trial courts not to give one. The instruction is a correct statement of the law as expressed in RCW

9A.44.020(1). But as the concurring opinion noted in *Chenoweth*, "Many correct statements of the law are not appropriate to give as instructions." 188 Wn. App. at 538 (Becker, J., concurring). And as noted above, the holding in *Clayton* approving the no corroboration instruction has been rejected by much more recent cases from courts in other jurisdictions. *E.g.*, *Gutierrez*, 177 So. 3d at 230-34. However, until the Supreme Court addresses this issue, we are constrained by *Clayton* to conclude that giving such an instruction is not reversible error.

We hold that the trial court did not err in instructing the jury that no corroboration of ED's testimony was needed to convict Amador of second degree rape.

CONCLUSION

We affirm Amador's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, J.

_____
LEE, C.J.