COURT OF APPEALS DIV I
2015 JUN 22 AM 9: 57



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71520-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHAD CURTIS CHENOWETH, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 22, 2015 |
| | ) | |

VERELLEN, A.C.J. — Chad Chenoweth appeals his conviction for first degree incest committed against his son, who was 19 years old at the time. He contends that the trial court erred by admitting his wife's testimony in violation of the spousal privilege, admitting hearsay testimony about the son's disclosures, and instructing the jury that corroboration of the son's testimony was not required. Because the statutory exception to the spousal privilege for criminal proceedings involving "any child" of the spouses is not limited to minor children, the trial court properly admitted the wife's testimony. And because the son's disclosures were not offered for the truth of the disclosures but to show context for the investigation, this evidence was properly admitted. Finally, the court's instruction on noncorroboration was a correct statement of the law and did not amount to a comment on the evidence. Accordingly, we affirm.

FACTS

Jainni and Chad Chenoweth married in 1991. Jainni[1] already had a daughter at the time. She and Chenoweth then had a son, C.C., who was born in Washington in January 1992. After C.C. was born, the family moved to Idaho.

Jainni described C.C. as disabled and mentally slow. C.C. was placed in a special education program at school. He also attended counseling and was on medication for attention deficit hyperactivity disorder for a period of time.

When C.C. was 12, he was placed in a state school and hospital in Idaho for individuals with mental disorders. C.C. remained in that placement until age 18.

When C.C. was about 16 or 17, Jainni moved back to Washington. In 2010, C.C. moved in with Jainni and Chenoweth in Bow, Washington. C.C. stayed in a downstairs room and spent most of his time playing video games. He could not cook for himself and had to be reminded to shower and dress properly. He was unable to hold a job and received SSI benefits.

Chenoweth was working at an auto repair shop in Marysville at the time. In October 2011, Jainni was hospitalized for a few days and Chenoweth cared for C.C. In April 2012, Chenoweth moved out of the home but remained married to Jainni. In late summer 2012, C.C. also moved out to live with his sister.

Soon after he moved out, C.C. disclosed to Jainni that Chenoweth had raped him while she was hospitalized in October 2011 and he was in Chenoweth's care. C.C. told his mother that one day while he was playing video games at the house, Chenoweth came into the room, put C.C. face down on the bed and anally raped him. C.C. was 19

---

[1] For ease of reference, we refer to Jainni Chenoweth by her first name.

years old at the time. C.C. did not report the incident to anyone until he disclosed it to Jainni.

After the disclosure, Jainni advised C.C. to contact Adult Protective Services. Following a mental health evaluation, Adult Protective services referred C.C.'s case to the police and assigned him a social worker. A deputy from the county sheriff's office took the initial report from C.C, and the social worker interviewed C.C. about the incident. The social worker determined that C.C. was a vulnerable adult.

The State ultimately charged Chenoweth with one count of third degree rape by lack of consent and one count of first degree incest. The State also sought an exceptional sentence.

The case proceeded to trial and the jury heard testimony from C.C., his mother, his sister, the investigating deputy, the social worker, and the mental health assessor. Chenoweth did not testify. At the close of evidence, the court dismissed the third degree rape charge for insufficient evidence of lack of consent. The jury found Chenoweth guilty of first degree incest. The jury also returned special verdicts finding that Chenoweth knew or should have known C.C. was particularly vulnerable or incapable of resistance and that Chenoweth used his position of trust to facilitate commission of the crime. The court sentenced Chenoweth to 102 months, the top of the standard range.

Chenoweth appeals.

## DISCUSSION

### Spousal Privilege

Chenoweth contends that the trial court's admission of Jainni's testimony violated the spousal privilege. Chenoweth argues that because C.C. was not a minor, the exception to the privilege for proceedings involving a crime committed against "any child" of either spouse did not apply. We disagree.

Testimonial privileges are creatures of statute and should be strictly construed.[2] The spousal privilege statute is designed to encourage marital harmony.[3] The statute both limits the competence of a spouse of a party to testify and provides a privilege for confidential communications between spouses.[4] One exception is for testimony in "a criminal action or proceeding for a crime committed by said spouse or domestic partner against any child of whom said spouse or domestic partner is the parent or guardian."[5]

---

[2] State v. Sanders, 66 Wn. App. 878, 883, 833 P.2d 452 (1992).

[3] Id.

[4] Id.

[5] RCW 5.60.060(1). The statute provides that "[a] spouse or domestic partner shall not be examined for or against his or her spouse or domestic partner, without the consent of the spouse or domestic partner; nor can either during marriage or during the domestic partnership or afterward, be without the consent of the other, examined as to any communication made by one to the other during the marriage or the domestic partnership. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to a criminal action or proceeding against a spouse or domestic partner if the marriage or the domestic partnership occurred subsequent to the filing of formal charges against the defendant, nor to a criminal action or proceeding for a crime committed by said spouse or domestic partner against any child of whom said spouse or domestic partner is the parent or guardian, nor to a proceeding under chapter 70.96A, 70.96B, 71.05, or 71.09 RCW: PROVIDED, That the spouse or the domestic partner of a person sought to be detained under chapter 70.96A, 70.96B, 71.05, or 71.09 RCW may not be compelled to testify and shall be so informed by the court prior to being called as a witness."

4

Here, Jainni testified that C.C. told her about the alleged rape approximately a year after it occurred. She also confirmed that she was hospitalized during the time the rape allegedly occurred. Jainni did not testify about what C.C. disclosed. She only testified to the fact that he disclosed "the allegations" and that his demeanor was "[k]ind of down" during the disclosure.[6]

Chenoweth moved in limine to exclude Jainni's testimony, contending that "child," as used in the exception to the spousal privilege, includes only minor children and did not apply to C.C., who was over age 18 at the time of the crime. The trial court disagreed, acknowledging that "there is no case law involving an adult child in this specific application," and noting that its ruling was "based on an interpretation that the child is not limited to someone under the age of 18 in this particular language."[7]

"Child" is not defined in chapter 5.60 RCW, which provides for the spousal privilege. And, as the parties acknowledge, there is no case law addressing whether "child" as used in Washington's spousal privilege statute is limited to minors. Chenoweth points to RCW 9A.42.010(3), which defines "child" as "a person under eighteen years of age." But that definition applies "[a]s used in this chapter," i.e., chapter 9A.42, "Criminal Mistreatment."[8] There is no other definition of "child" in Title 9A, the Washington criminal code. The definitions for sex offenses in chapter

---

[6] Report of Proceedings (RP) (Dec. 10, 2013) at 83.

[7] RP (Dec. 9, 2013) at 28.

[8] RCW 9A.42.010. These offenses refer to a "child" or "dependent person" under the care of the defendant. See, e.g., RCW 9A.42.020, .030, .035 (defining first, second, and third degree criminal mistreatment).

9A.44 RCW do not define "child." Rather, sex offenses that relate to child victims specify a particular age of the victim.[9] The incest statute under which Chenoweth was charged, RCW 9A.64.020, does not use the term "child." It defines the offense as one involving a victim who is related to the perpetrator "as an ancestor, descendant, brother, or sister."[10]

The interpretation of a statute is a question of law reviewed de novo.[11] Courts first examine the language of the statute and determine the plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole."[12] Statutes must be interpreted to give effect to all language used, rendering no portion meaningless or superfluous.[13]

Here, viewed in context, RCW 5.60.060 evidences an intent that "any child" in section (1) is not limited to minors because "minor child" is specified elsewhere in the statute. Section (2)(b) specifically refers to a "minor child": "A parent or guardian of a minor child arrested on a criminal charge may not be examined as to a communication

---

[9] See, e.g., RCW 9A.44.073 (victim of first degree rape of a child must be under 12 years old); RCW 9A.44.076 (victim of second degree rape of child must be at least 12 years old but less than 14 years old); RCW 9A.44.079 (victim of third degree rape of a child must be at least 14 years old but less than 16 years old); RCW 9A.44.083 (victim of first degree child molestation must be under 12 years old); RCW 9A.44.086 (victim of second degree child molestation must be at least 12 years old but under 14 years old); RCW 9A.44.089 (victim of third degree child molestation must be at least 14 years old but under 16 years old).

[10] RCW 9A.64.020.

[11] State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010).

[12] State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

[13] City of Seattle v. State, 136 Wn.2d 693, 698, 965 P.2d 619 (1998) (quoting Whatcom County v. City of Bellingham, 128 Wn.2d 537, 546, 909 P.2d 1301 (1996)).

between the child and his or her attorney if the communication was made in the presence of the parent or guardian." Because the legislature saw the need to specifically use the term "minor child" in section 2(b), it would be inconsistent to conclude that the legislature meant the term "child" in section (1) to mean the same thing. Such a reading would render the term "minor" in section (2)(b) superfluous.[14]

Chenoweth contends that the dictionary definition supports his interpretation of "child" in section (1) to apply only to minors. "When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning.[15] Black's Law Dictionary provides multiple definitions of "child," some in terms of age—"under the age of majority," "not reached the age of 14," "a young person," "baby or fetus"— and others in terms of a family relationship—"son or daughter."[16] Chenoweth cites Black's Law Dictionary online, which also recognizes these two meanings of "child" in law:

> (1) In the law of the domestic relations, and as to descent and distribution, it is used strictly as the correlative of "parent," and means a son or daughter considered as in relation with the father or mother. (2) In the law of negligence, and in laws for the protection of children, etc., it is used as the . . . opposite of "adult," and means the young of the human species, (generally under the age of puberty,) without any reference to parentage and without distinction of sex.[17]

---

[14] The Sentencing Reform Act of 1981 also uses the term "minor child" and does not include a definition of "child." RCW 9.94A.030(31) (defining "minor child" as "a biological or adopted child of the offender who is under age eighteen at the time of the offender's current offense.")

[15] Gonzalez, 168 Wn.2d at 263.

[16] BLACK'S LAW DICTIONARY 290 (10th ed. 2014).

[17] What is Child?, http://thelawdictionary.org/child. The online definition cited by Chenoweth appears to rely on a Florida case, Miller v. Finegan, 26 Fla. 29, 7 So. 140, 6 L. R. A. 813 (1890).

Chenoweth contends that "child" as used in the exception to the spousal privilege statute relates to laws for the protection of children, citing case law recognizing that this exception seeks to protect against child abuse.[18] Therefore, he argues, the second definition of "child" applies, i.e., the opposite of adult, or a minor.

While the cases cited by Chenoweth recognize that the exception to the privilege promotes the protection of children from abuse, those cases all involved minor children and do not specifically address any age limit for a "child" in such contexts.[19] Nor do they limit the exception to children involved in child abuse cases. Rather, the focus in those cases was the interpretation of the words "parent" and "guardian." The court held that the exception applied to children who were under the care of the spouse to the extent that the spouse functioned as a parent or guardian, even if not the legal parent or guardian.[20] The cases Chenoweth cites do not support the proposition that the exception is limited to minor children because the only goal is to protect minor children from abuse.

Here, "the child," though over the age of 18, was still under the care of and was dependent upon his parents. Such a "child" is equally deserving of protection from incest.

---

[18] See State v. Waleczek, 90 Wn.2d 746, 752, 585 P.2d 797 (1978) (citing child abuse reporting statutes and recognizing that "'the legislature's purpose was to facilitate the disclosures of abuses of children, so that the offenders might be punished and the children be protected from further mistreatment'") (quoting State v. Lounsbery, 74 Wn.2d 659, 663, 449 P.2d 1017 (1968)); accord Sanders, 66 Wn. App. at 884.

[19] See Waleczek 90 Wn.2d at 752-53; Sanders, 66 Wn. App. at 884.

[20] Waleczek 90 Wn.2d at 752; see also State v. Wood, 52 Wn. App. 159, 165-66, 758 P.2d 530 (1988); State v. Modest, 88 Wn. App. 239, 248, 944 P.2d 417 (1997).

8

More importantly, the overriding purpose of the spousal privilege is to promote marital harmony.[21] Applying the statute to any child without regard to age is not contrary to the goal of marital harmony. If one spouse harms the parties' child, regardless of the child's age, there is no domestic harmony to protect. "When there is no domestic harmony to protect, we believe the policy supporting a spousal privilege does not merely pale; it withers and dies."[22]

In People v. McGraw, the California court came to a similar conclusion.[23] There, the court interpreted a similar statute in a prosecution for the murder of the defendant's stepson, who was an adult. The California spousal privilege statute provided an exception for criminal proceedings in which one spouse is charged with a crime committed against "a child of either [spouse]."[24] The court concluded that this exception was not limited to crimes committed against minor children and held that the defendant's wife was permitted to testify against him in a prosecution for the murder of her 22-year-old son. As the court explained:

> Statutes must be given a reasonable and common sense construction that leads to a wise policy and avoids absurd results. Realistically, the word "child" connotes a family relationship without any age limitations. A person remains a child of one's parents throughout life, not simply until the age of majority is reached.
>
> . . . .
>
> Our interpretation accords with the basic purpose of the marital communications privilege which is to preserve confidence and marital harmony between the spouses. Section 985, subdivision (a) is grounded

---

[21] Sanders, 66 Wn. App. at 883.

[22] Wood, 52 Wn. App. 159, 165 n.3.

[23] 141 Cal. App. 3d 618, 190 Cal. Rptr. 461 (1983).

[24] Id. at 620.

on the self-evident premise that marital harmony would be nonexistent in criminal actions where a child of either spouse is the victim of a crime committed by one of the spouses. A parent is no less outraged, and marital harmony is no less obliterated because the child who was murdered was past his 18th birthday.[25]

Similarly, here, "any child" as used in RCW 5.60.060(1) means the child of either spouse, regardless of age. The trial court correctly ruled that the spousal privilege did not preclude Jainni's testimony.

### Evidence of Disclosures

Chenoweth next challenges the admission of testimony that C.C. disclosed the rape to Jainni, his sister, and law enforcement a year after it occurred. The State argued to the trial court that the disclosures were admissible under the fact of complaint exception to the hearsay rule. Chenoweth argued that because they were not timely made, the disclosures were inadmissible under that hearsay exception. The trial court acknowledged the untimeliness of the disclosure, but ruled that evidence of the disclosures was admissible to explain how the allegations came to the attention of law enforcement:

> Well, without going into any actual statement: Did you tell someone, yes or no? Is that hearsay? I'm trying to obviously balance it, but I do believe the State is entitled—and let me back up a bit. A year or approximately a year is certainly what I would not consider timely in that sense. But I don't believe that prevents the State from presenting or the jury from hearing how these matters came to be where they are. So without allowing me any detail of the incidents alleged or the identification of the perpetrator, the fact that he told someone and someone then encouraged him to do something else I believe is admissible. And it will stay absolutely that generic[,] simply to explain to the jury how we get here, nothing more, or how the case came to light. I shouldn't say how we get here, but how it came to law enforcement's attention.

---

25 Id. at 622 (citations omitted).

10

So I will, this is a motion in limine, but I'll deny that motion and allow the State to present testimony as to a particular time frame that a complaint was made by the alleged victim and what, if anything, without specific words they encourage him to do or not do.[26]

At trial, Jainni, C.C.'s sister, the investigating officer, and a social worker all testified that C.C. told them about the allegations. A mental health assessor also testified that "[b]asically [C.C.] said that his father had sexually abused him one time, and it occurred since his birthday that year, since January 2012."[27] Each of these witnesses further testified about C.C.'s mental status, generally agreeing that he had some sort of developmental delay, or at least appeared to have the mental capacity of a child rather than an adult.

Chenoweth is correct that the disclosures were inadmissible under the fact of complaint exception to the hearsay rule because they were not timely made. The fact of complaint or hue and cry doctrine allows the prosecution in sex offense cases to present evidence that the victim complained to someone after the assault.[28] But "[t]he rule admits only such evidence as will establish that the complaint is timely made."[29] The State attempts to interpret the case law as permitting any testimony establishing when the complaint was made, not only that a timely complaint was made.[30] But

---

[26] RP (Dec. 9, 2013) at 7-8.

[27] RP (Dec. 10, 2013) at 153-54.

[28] State v. Ferguson, 100 Wn.2d 131, 135, 667 P.2d 68 (1983).

[29] Id. at 135-36.

[30] The State cites language in State v. Goebel, 40 Wn.2d 18, 25, 240 P.2d 251 (1952) ("[t]he general rule is that, in cases of this kind, a witness may testify that the prosecutrix made complaint after the assault") and State v. Murley, 35 Wn.2d 233, 237, 212 P.2d 801 (1950) ("[W]e permit the state to show in its case-in-chief *when* the woman first made a complaint consistent with the charge."). But in both cases, the evidence was offered to show that the complaints were in fact timely. In Goebel, "[t]his

11

neither case cited by the State eliminated the timeliness requirement, as it was later made explicit in Ferguson.[31]

Here, as the trial court found, the disclosures made nearly a year later cannot reasonably be considered "timely." Therefore, the disclosures were not admissible under the fact of complaint exception. But the trial court admitted the evidence to show only how the allegations came to the attention of law enforcement. We agree.

In State v. Iverson, the trial court admitted a statement the victim made to a police officer when she answered the door and identified herself to the officer.[32] The victim did not appear at trial and the officer testified that the woman who answered the door identified herself as the victim. The trial court ruled that the statement was admitted to show only that the person who answered the door identified herself with the name of the victim, not to show that she was in fact the victim, and was therefore not hearsay.[33] On appeal, the court agreed that the statement was not hearsay because it was not offered to prove the truth of the matter asserted.[34] The court further concluded that the statement was relevant to explain why the officers conducted further investigation: "When a statement is not offered for the truth of the matter asserted, but

---

testimony was admitted to prove that the complaining witness properly and promptly made hue and cry." 40 Wn.2d at 25. In Murley, "[t]he child and her parents denied that they had delayed in complaining and asserted that they notified the police the same day." 35 Wn.2d at 235.

[31] 100 Wn.2d at 135-36; see also State v. Alexander, 64 Wn. App. 147, 151, 822 P.2d 1250 (1992) ("this narrow exception allows only evidence establishing that a complaint was timely made") (citing Ferguson).

[32] 126 Wn. App. 329, 333, 108 P.3d 799 (2005).

[33] Id.

[34] Id. at 336.

is offered to show why an officer conducted an investigation, it is not hearsay and is admissible."[35]

Here, the witnesses simply testified that C.C. reported the "allegations" to them without reference to any specifics of the allegations.[36] This testimony was not offered for the truth of the allegations, but to show what the witnesses did next and to provide a basis for their testimony. At his mother's suggestion, C.C. contacted Adult Protective Services, he was referred for a mental health evaluation, and he told the mental health assessor that he had been sexually abused by his father. The case was then referred to the police and assigned to a social worker, who determined that he was a vulnerable adult. Thus, as in Iverson, C.C.'s disclosures were not hearsay because they were not offered for the truth of the disclosures, but to give context for the investigation. They also explained why the investigation was conducted, which was relevant to the determination that C.C. was "particularly vulnerable," a fact at issue in the special verdict finding submitted to the jury.[37]

---

[35] Id. at 337; see also Williams v. Dep't of Licensing, 85 Wn. App. 271, 280, 932 P.2d 665 (1997) (statement a military gate guard made to a police officer that the defendant smelled like alcohol gave a basis for the officer to detain the defendant for further investigation, was not offered for truth of the matter asserted, and was therefore admissible).

[36] RP (Dec. 10, 2013) at 83 (Jainni testified that she "learn[ed] about the allegations of the present case" from her son); RP (Dec. 11, 2013) at 32 (Lind testified that there was a time she became "aware of the present allegations in the case"); RP (Dec. 10, 2013) at 122 (social worker Kim Tyler testified that C.C. "explain[ed to her] the nature of the allegation"); RP (Dec. 10, 2013) at 136 (investigating deputy Brad Holmes testified that he had "a conversation with [C.C.] that day about the allegation").

[37] Clerk's Papers (CP) at 95.

Chenoweth contends this testimony was irrelevant, citing State v. Edwards.[38] There, the trial court permitted a detective to testify that a confidential informant told him that a person with the same first name as the defendant was dealing cocaine, over a hearsay objection. The court reversed on appeal, concluding that the statement was inadmissible hearsay as its only relevance was the truth of the statement.[39] Here, there was no testimony about the content of the disclosures, so there was no "truth" to be asserted other than the fact that C.C. disclosed the allegations.[40] The trial court did not abuse its discretion.

### Noncorroboration Instruction

Finally, Chenoweth challenges the following jury instruction as an impermissible comment on the evidence:

> In order to convict a person of incest[,] it shall not be necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility.[41]

Chenoweth acknowledges that RCW 9A.44.020(1) provides that testimony of an alleged sex offense victim need not be corroborated, but he argues that the crime for which he was convicted, incest, does not fall within the statute. He contends that the court's instruction was an incorrect statement of the law and an impermissible comment on the evidence. We disagree.

---

[38] 131 Wn. App. 611, 128 P.3d 631 (2006).

[39] Id. at 614-15.

[40] While arguably C.C.'s sister's testimony about the disclosure did not provide context for the investigation and therefore may be of questionable relevance, any error in its admission was harmless. Her testimony that she was "aware of the present allegations in the case" was simply cumulative of the other testimony and did not provide any substance of the disclosure. RP (Dec. 11, 2013) at 32.

[41] CP at 89.

14

Whether a jury instruction is legally correct is reviewed de novo.[42] "A jury instruction is not an impermissible comment on the evidence when sufficient evidence supports it and the instruction is an accurate statement of the law."[43]

RCW 9A.44.020(1) provides: "In order to convict a person of any crime defined in this chapter[,] it shall not be necessary that the testimony of the alleged victim be corroborated." Courts have upheld sex offense victim noncorroboration instructions as correct statements of the law under the statute.[44]

Chenoweth contends that the instruction given here was not a correct statement of the law because the crime of incest is defined in chapter 9A.64 RCW rather than chapter 9A.44 RCW. But the noncorroboration statute simply states that corroboration is not required in sex offenses defined in chapter 9A.44 RCW; it does not state that corroboration is required in all other cases. The lack of a reference to incest does not reveal a legislative intent to require corroborating evidence in an incest case. To the contrary, our case law expressly recognizes that, after the legislature abolished a former statute requiring corroboration in a variety of sex offenses, corroboration is not required in incest cases. As the court held in State v. Davis:

> "[I]t is not necessary that there shall be actual corroboration of the prosecutrix in such [incest] cases, since there is no statute requiring it. . . . [T]he actual rule there declared by the court is such that the uncorroborated testimony of the prosecutrix is sufficient if the jury finds it to be true. Of the truth the jurors shall be the judges."[45]

---

[42] State v. Becklin, 163 Wn.2d 519, 525, 182 P.3d 944 (2008).

[43] State v. Johnson, 152 Wn. App. 924, 935, 219 P.3d 958 (2009).

[44] Id. at 936-37; State v. Zimmerman, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005).

[45] 20 Wn.2d 443, 447, 147 P.2d 940 (1944) (quoting State v. Conlin, 45 Wash. 478, 479, 88 P. 932 (1907); see also State v. Coffey, 8 Wn.2d 504, 505-06, 112 P.2d 989 (1941) (recognizing in an incest case that "[i]n the absence of a statute, none has

15

This holding has not been overruled, and no statute requires corroboration in incest cases.[46] The trial court's instruction was a correct statement of the law.

We do recognize that the Washington Supreme Court Committee on Jury Instructions recommends against giving noncorroboration instructions:

> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. Whether a jury can or should accept the uncorroborated testimony of the prosecuting witness or the uncorroborated testimony of the defendant is best left to argument of counsel.[47]

Several courts "share the Committee's misgivings."[48] But there is a historical basis for instructing the jury regarding corroboration for sex crimes, including incest. As case law recognizes, corroboration of the complaining witness in a rape case was previously required by statute.[49] After that statute was abolished, courts held that corroboration is not required in incest cases or other sex offenses, recognizing that "[s]uch offenses are rarely[,] if ever[,] committed under circumstances permitting knowledge and observation

___

been called to our attention, requiring corroboration, the conviction may be had on uncorroborated testimony of the prosecutrix").

[46] See State v. Galbreath, 69 Wn.2d 664, 669, 419 P.2d 800 (1966) (reiterating that "the rule established in this state is that, in the absence of a statute to the contrary, a person accused of a sex offense involving children may be convicted upon the uncorroborated testimony of the complaining witness, if the jury finds such testimony to be true").

[47] 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 45.02, cmt. at 883 (3rd ed. 2008).

[48] Zimmerman, 130 Wn. App. at 182-83.

[49] See State v. Morden, 87 Wash. 465, 467, 151 P. 832 (1915) (noting that Rem. & Bal. Code § 2443 was repealed in 1913).

by persons other than the accused and the complaining witness, and not all such offenses are otherwise capable of corroboration."[50]

Because of such concerns in sex crimes, including incest and rape, it is permissible to instruct the jury that there is no corroboration requirement. There appears to be no comparable rationale to give such an instruction for other crimes. While we are concerned with the use of such an instruction even in sex crimes, we do not conclude that its use in this case was a comment on the evidence. The only witness who described the allegations of incest was the 19-year-old developmentally delayed child victim. There were no other witnesses to the incident.

We affirm the judgment and sentence.

WE CONCUR:

---

[50] Galbreath, 69 Wn.2d at 670.

<u>State v. Chenoweth</u>, 71520-8-I

BECKER, J. (concurring) — If the use of the noncorroboration instruction were a matter of first impression, I would hold it is a comment on the evidence and reverse the conviction. I agree with the committee on pattern jury instructions that the matter of corroboration is really a matter of sufficiency of the evidence. Many correct statements of the law are not appropriate to give as instructions. But we are bound by <u>State v. Clayton</u>, 32 Wn.2d 571, 202 P.2d 922 (1949), to hold that the giving of such an instruction is not reversible error. <u>State v. Zimmerman</u>, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005). Accordingly, I must concur.

Becker, J.